**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 12-16-DLB-JGW**

**KEITH RUSSELL**                                                                        **PLAINTIFF**

**VS.**                     **MEMORANDUM OPINION AND ORDER**

**CITI, CITIGROUP, INC., CITICORP CREDIT SERVICES, INC.,
AND DOES 1-10**                                             **DEFENDANTS**

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This is a proposed class action for breach of implied contract, unjust enrichment, and conversion. Plaintiff Keith Russell[1] alleges that his former employers, Defendants Citi, Citigroup, Inc.,[2] Citicorp Credit Services, Inc., and Does 1-10, owe him unpaid wages and overtime because they forced him to work before and after his shift, and during rest and meal periods. The Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332. This matter is currently before the Court on Defendants' Motion To Dismiss Counts 1, 2, 3, 4, and 6 of the Complaint Under Rule 12(b)(6) (Doc. # 14). This motion is fully briefed and ripe for review. (*See* Docs. # 14-1, 37, & 42).

## II. FACTUAL BACKGROUND

The following facts are derived from the Complaint and are assumed to be true for

---

[1] Russell's co-plaintiff, Krista Bergman, voluntarily dismissed her cause of action against Defendants on April 30, 2012. (*See* Doc. # 36).

[2] Defendants assert that "Citi and Citigroup, Inc. are not proper defendants in this matter because they are not [Plaintiff's] employer." (Doc. # 14-1, at 1 fn.1). They cite the Declaration of Beth Edwards (Doc. # 15-2), a human resources employee who alleges that Plaintiff was employed by Citicorp Credit Services, Inc. alone. However, Citi and Citigroup, Inc. have not filed a motion to be dismissed from this action.

the purposes of the instant motion. Plaintiff Keith Russell worked at Defendants' call center in Florence, Kentucky as an hourly employee from August of 2004 to 2009. Plaintiff was paid according to the number of hours he was "logged in" to his phone system. To log in to this system, Plaintiff had to first log in to several computer programs, a task that required up to ten minutes per day. He then had to log out of these programs at the end of his shift, requiring another ten minutes. Plaintiff thus alleges that Defendants forced him to work "off-the-clock" for approximately twenty to twenty-five minutes per day.

Plaintiff further alleges that Defendants required him to work through rest and meal breaks. This was allegedly the result of Defendants' "reward structure" which "revolve[d] around non-stop phone time." (Doc. # 1, at ¶ 25). Those employees who took too much time in between calls, even to use the restroom, were reprimanded or even terminated. According to Plaintiff, Defendants rigorously implemented this practice through its managers.

Plaintiff initiated the instant case with the filing of a Complaint on January 12, 2012. (*See* Doc. # 1). By his Complaint (Doc. # 1), Plaintiff alleges claims for breach of implied contract (Counts I and 2), unjust enrichment (Count 3), conversion (Count 4), unfair wage and hour practices under Kentucky's Wages and Hours Act, K.R.S. § 337.385 (Count 5), and punitive damages (Count 6). By the instant Motion To Dismiss (Doc. # 14), Defendant moves to dismiss all counts except Count 5. For the reasons set forth below, the Court will **grant** the instant motion as to Counts 1, 2, 4, and 6, and **deny** it as to Count 3.

### III. ANALYSIS

**A.     Standard of Review**

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of

2

the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**B. Defendants' Motion To Dismiss (Doc. # 14)**

    **1.    Plaintiff's conversion claim (Count 4) is barred by the statute of limitations and his punitive damages claim (Count 6) is not a cause of action.**

Pursuant to K.R.S. § 413.125, conversion claims are subject to a two-year statute of limitations. *Rich & Rich P'ship v. Poetman Records USA, Inc.*, 714 F.Supp.2d 657, 669

3

(E.D. Ky. 2010). Here, Plaintiff alleges that he ceased working for Defendant in 2009, and did not initiate this case until January 12, 2012. His conversion claim is therefore barred by the applicable statute of limitations.

In Count 6, Plaintiff purports to assert a cause of action for "punitive damages" on his conversion claim (Doc. # 1, at ¶ 60; Doc. # 37, at 5, fn. 2). However, punitive damages are a remedy, not a cause of action. In addition, Plaintiff's conversion claim is time-barred as noted above. Therefore, the Court will dismiss Count 6.

### 2. Plaintiff fails to state a claim for breach of implied contract

Kentucky law recognizes the validity of implied-in-fact contracts. *BDT Products, Inc. v. Lexmark Intern. Inc.*, 274 F.Supp.2d 880, 886 (E.D. Ky. 2003), aff'd 124 F. App'x. 329 (6th Cir. 2005). "A contract implied-in-fact is not an 'anticipated' contract but rather a true contract" requiring both mutual assent and definite terms. *BDT Products*, 274 F.Supp.2d at 886 (citing *Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 466 (1929)). It differs from an express contract only in the *method* of proof required. *BDT Products*, *supra*. With an express contract, mutual assent is demonstrated by looking to written or spoken word alone, and the terms and conditions are explicitly set forth. *Victor's Ex'r v. Monson*, 283 S.W.2d 175, 176-77 (Ky. App. 1955); *Dorton v. Ashland Oil & Refining Co.*, 303 Ky. 279, 281, 197 S.W.2d 274 (1946). With an implied-in-fact contract, mutual assent is inferred from "the circumstances, the conduct, and the acts or relations of the parties," *see Monson*, *supra*, and "one or more of the terms or conditions are implied from the conduct of the parties." *See Dorton*, *supra*.

An implied-in-fact contract is also held to a higher standard of proof than an ordinary contract. *BDT Products*, *supra*. Mutual assent must be "clearly and convincingly manifest,"

4

"positively definite," and "mutually understood." *Id.* at 886-887. In addition, "the parties must agree on all material and essential terms and leave nothing to be agreed upon as a result of future negotiations." *Id.* at 886 (citation omitted). If even one essential term is not agreed upon, no contract has been made. *Id.* at 887 (citation omitted).

In the instant case, Plaintiff asserts that he entered into two separate implied-in-fact contracts with Defendant. In Count 1, he alleges that he contracted to "work for Citi in exchange for payment for all hours worked," including "off-the-clock" hours. According to Plaintiff, this contract is evidenced by his pay-stubs, the nature of his employment, "other circumstances surrounding the parties' employment relationship," and "the situation and objective of Citi as an employer." (Doc. # 1, at ¶ 34). These vague allegations are not evidence of a contract. If they were, all employees would have an implied contract with their employer. As this Court has explained, implied-in-fact contracts require more than just payment for services:

> "[An implied-in-fact contract] requires stricter proof ... than to establish ordinary contracts—more than proof of performance of the services and casual, indefinite expressions of an intention to pay for same, or acknowledgment of gratitude or dependence on the part of the recipient, or expressions of a wish or desire that the server or attendant should be compensated, for cases of this character are pregnant with danger of spoliation."

*BDT Products*, *supra* (quoting *Kellum*, *supra* at 464). Simply stated, Plaintiff's pay stubs do not constitute a contract. Count 1 thus fails to state a claim upon which relief can be granted.

In Count 2, Plaintiff alleges that he "was contractually entitled to rest and/or meal breaks." (Doc. # 37, at 5). But the Complaint does not allege that Defendant ever promised Plaintiff rest or meal breaks. In fact, the Complaint alleges exactly the opposite:

5

that throughout the entirety of Plaintiff's employment, Defendant "forced [him] to work . . . during [his] rest and lunch periods without compensation for that time." (Doc. # 1, ¶ 25). Plaintiff alleges that interrupted rest and meal periods were actually so ingrained in "the company's culture" that managers were instructed to encourage employees "not [to] take full rest and meal periods." (*Id.* at ¶¶ 25-26). These allegations from the Complaint contradict Plaintiff's assertion that the Parties formed an implied-in-fact contract entitling Plaintiff to rest and meal breaks. When a plaintiff's argument is contradicted by the allegations in his own complaint, that argument is not entitled to a presumption of truth. *See, e.g.*, *In re National Century Fin. Enterprises, Inc. Inv. Litig.*, 604 F.Supp.2d. 1128, 1157 (S.D. Ohio 2009); *see also E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001) (refusing "to place significance on bare conclusory allegations" that are "contradicted by the factual allegations" of the complaint). Accordingly, Count 2 also fails to state a claim upon which relief can be granted.

Because the Court will dismiss Counts 1 and 2 pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court need not reach Defendants' argument that Counts 1 and 2 are preempted by Kentucky's Wages and Hours Act.

> **3. The Court will not dismiss Plaintiff's unjust enrichment claim (Count 3) because Defendant has not shown that it fails to state a claim, and because it is not preempted by Kentucky's Wages and Hours Act.**

Defendants assert that Plaintiff's unjust enrichment claim (Count 3) fails to state a claim under Rule 12(b)(6). However, this assertion fails because Defendants do not support it with any reasoning whatsoever. *See, e.g.*, *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (holding that a movant does not carry its burden under Rule 12(b)(6) where it "does not offer a single argument to supports [its] assertion that [the plaintiff] failed

to state a claim . . . .").

In the alternative, Defendants argue that Plaintiff's Wages and Hours Act claim preempts his unjust enrichment claim through "field preemption." However, no Kentucky court has addressed this issue. Thus, as a federal court sitting in diversity, the Court's task is to predict how the Kentucky Supreme Court would rule if it were deciding this question of state law. *National Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 755 (6th Cir. 2007) (internal citation and quotation omitted).

A Kentucky statute may preempt the common law through field preemption.[3] *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). In contrast to express preemption,[4] field preemption does not require explicit statutory language. Instead, field preemption occurs "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party . . . ." *Id.*; *see also, Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010). Field preemption does not occur, however, where "the elements of the common law cause [ ] of action bear no resemblance to those intended to be embraced by the [statute]." *McDonald's Corp. v. Osborn*, 309 S.W.3d 274, 285-86 (Ky. App. 2009).

---

[3] The Court notes that Kentucky courts have applied field preemption sparingly. *See,* e.g., *Foster v. Kentucky Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006) (holding that the Kentucky Motor Vehicle Reparation Act, K.R.S. § 304.39, *et seq.* preempts general insurance law because it is a "comprehensive act" which establishes tort remedies, regulates insurers, and provides the penalties insurers must pay if they violate the act); *see also Meyers v. Chapman Printing Co.,* 840 S.W.2d 814, 820-21 (Ky. 1992) (holding that Kentucky's workers' compensation statute preempts common law tort claims, but not statutory civil rights claims); *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 239 (Ky. App. 2001) (holding that intentional infliction of emotional distress claims against the plaintiff's employer were preempted by K.R.S. Chapter 344, Kentucky's civil rights statutes); *Kroger v. Buckley*, 113 S.W.3d 644, 646-47 (Ky. App. 2003) (same).

[4] To expressly preempt the common law, a state statute must use language that is both "clear and expressed." *Commonwealth Natural Res. & Envtl. Prot. Cabinet v. Neace*, 14 S.W.3d 15, 19 (Ky. 2000) (citation omitted). This principle is also enshrined in Section 233 of the Kentucky Constitution, which provides that "the common law remains in effect until repealed or clearly altered by a specific legislative act." *Id.* (paraphrasing Section 233 of the Kentucky Constitution).

Field preemption analysis thus appears to turn largely on whether a common law claim and a statutory claim are "substantially similar." *Id.*; *see also, State Farm Mut. Auto. Ins. Co. v. Newburg Chiropractic, P.S.C.*, 683 F.Supp.2d 502, 508 (W.D. Ky. 2010) (holding that preemption does not apply "where two statutes or causes of action address different kinds of culpable behavior."). Here, Defendants argue that the Wages and Hours Act preempts Plaintiff's unjust enrichment claim because (1) both claims are based on the same alleged conduct; and (2) the Act provides Plaintiff a civil remedy.

Yet, Defendants fail to cite a single case holding that the Wages and Hours Act preempts *any* common law cause of action. In fact, only one Kentucky court has analyzed whether the Act preempts the common law at all. In that case, *Dodd v. Dyke Industries, Inc.*, the Western District of Kentucky held that the Act does not preempt common law breach of contract claims. No. 3:04-CV-226-H, 2008 WL 1884081, at *3 (W.D. Ky. Apr. 28, 2008). Defendants do not cite *Dodd*, nor do they make any attempt to distinguish it from the instant case. Moreover, Defendants do not articulate why they believe that an unjust enrichment claim is "substantially similar" to a Wages and Hours Act claim. *See McDonald's*, *supra*.

Instead, Defendants cite a litany of cases holding that the Fair Labor Standards Act preempts common law claims seeking unpaid wages and overtime. (Doc. # 14-1, at 5). Those cases are, of course, not mandatory authority. Moreover, they do not appear to be indicative of how the Kentucky Supreme Court would decide this issue. First, nearly all of Defendants' cases found preemption based on the *factual* similarity between the common law claim and the statutory claim. *See Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 WL 203028, at *7 (W.D.N.Y. Jan. 23, 2008); *Morgan v. Speakeasy, LLC*, No.

8

05-CV-5705, 2007 WL 2757170, at *24 (N.D. Ill. Sept. 20, 2007); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, at *2 (D. N.J. Jan. 2, 2006); *Johnston v. Davis Security, Inc.*, 217 F.Supp.2d 1224, 1227-28 (D. Utah 2002); *Sorensen v. CHT Corp.*, Nos. 03-CV-1609 and 03-CV-7362, 2004 WL 442638, at *7 (N.D. Ill. 2004). Since field preemption in Kentucky is based largely on the *legal* similarity, not the *factual* similarity, between the common law claim and the statutory claim, *see McDonald's Corp. v. Osborn*, 309 S.W.3d at 285-86; *Newburg Chiropractic,* 683 F.Supp.2d at 508, Defendants' cases cannot be relied upon as a bellwether of the Kentucky Supreme Court's future jurisprudence. Second, two of Defendants' cited cases conclude that the FLSA preempts common law breach of contract claims. *See Anderson v. Sara Lee Corp.,* 508 F.3d 181, 194-95 (4th Cir. 2007); *Lopez v. Flight Servs. & Sys., Inc.*, *supra*. According to the Western District of Kentucky's holding in *Dodd*, the Kentucky Supreme Court is unlikely to reach the same conclusion with respect to the Wages and Hours Act. *See Dodd*, *supra*. Therefore, lacking any clear indication of how the Kentucky Supreme Court would decide this issue, this Court is unwilling to predict that the Wages and Hours Act preempts common law unjust enrichment claims.

But even assuming *arguendo* that a Wages and Hours Act claim may sometimes preempt an unjust enrichment claim for unpaid overtime hours, it would be premature to make that finding in *this* case at *this* stage in the litigation. In Kentucky, field preemption only applies if the statute provides the plaintiff a remedy. *See Grzyb*, 700 S.W.2d at 401. For instance, K.R.S. Chapter 344, Kentucky's civil rights statutes, permits a plaintiff to assert a cause of action similar to common law intentional infliction of emotional distress against his employer, but not against his individual managers. *See Wilson v. Lowe's Home*

9

*Center*, 75 S.W.3d 229, 239 (Ky. App. 2001). Thus, the Kentucky Court of Appeals has held that Chapter 344 only preempts common law IIED claims against one's employer, not one's individual managers. *Id.* Here, it is unclear that the Wages and Hours Act provides Plaintiff a remedy for his alleged unpaid overtime hours because Plaintiff has not yet established that he is an "employee" entitled to bring a claim under the Act. *See* K.R.S. § 337.020 (defining the term "employee" for purposes of the Act). If he is unable to establish that fact, the Act will provide him no remedy, and preemption will not apply.

For all these reasons, the Court will deny Defendants' challenge to Plaintiff's unjust enrichment claim.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Defendants' Motion To Dismiss (Doc. # 14) is **GRANTED** as to Counts 1, 2, 4, and 6. Those Counts are hereby **DISMISSED WITH PREJUDICE**; and

(2) Defendants' Motion To Dismiss (Doc. # 14) is **DENIED** as to Count 3.

This 28th day of November, 2012.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\Covington\2012\12-16 MOO - grant and deny in part MTD.wpd